STATE OF MISSISSIPPI EX REL. J. B. STIRLING, ATTORNEY-
GENERAL, v. BOARD OF LEVEE COMMISSIONERS OF YAZOO-
MISSISSIPPI DELTA.

[51 South. 211.]

CONSTITUTIONAL LAW. *Constitution 1890, sec. 109. Levee commission-
ers. Contract with member. Employment of member as attor-
ney.*

Under constitution 1890, sec. 109, providing that a public officer or
member of the legislature shall not be interested in any contract
with the state, or any district, county, city or town thereof, au-
thorized by any law passed, or order made by any board of which
he may be or may have been a member, during the term for
which he may have been chosen, or within one year after the
expiration thereof, a contract cannot lawfully be made by the
board of levee commissioners employing one of its members as a
lawyer to assist its regular attorney in the defense of suits
against it, since the board is an agency created by the state for
administering the affairs of the levee district.

FROM the chancery court, second district, Coahoma county.
HON. MANUEL E. DENTON, Chancellor.

The State *ex rel.,* etc., appellant, was complainant in the
court below; the board of levee commissioners, appellee, was
defendant there.    From a decree in defendant's favor the com-
plainant appealed to the supreme court.

*J. B. Stirling,* attorney-general, and *George Butler,* assistant
attorney-general, for appellant.

The contract between the board of levee commissioners and
D. A. Scott, its president, and one of its members, is void be-
cause contrary to the public policy of the state; is void at com-
mon law, as well as under the constitution and statutes of this
state.    It is perfectly manifest that the members of the levee
board are public officers and that the levee district is a municipal

or public corporation, exercising certain governmental functions, and, therefore, simply a governmental agency of the state. The levee district and the board of levee commissioners are provided for in Constitution 1890, sections 227 to 239 inclusive. That the levee commissioners are public officers cannot be doubted. *Yerger v. State,* 91 Miss. 802, 45 South. 849.

It is a principle universally recognized that a trustee, whether private or public, cannot contract with himself. The members of the levee board are public trustees, individually and collectively, and, therefore, the contract falls within the condemnation of all the courts upon this subject.

It may be that if Constitution 1890, section 109 and Code 1906, § 1305, be considered without reference to the principles of the common law, this contract would not be void, proceeding upon the principle announced by this court in a recent case construing Code 1906, § 3894; but such effect has not been given similar statutes in other states.

However this may be, the contract is clearly violative of section 109 of the Constitution. That section, by its terms, applies to all contracts of the state, district, county, city, or town, and to all public officers of this state. It is intended to prohibit officers from contracting with themselves in regard to matters with which they are required to deal in their official capacity. It may be true that it is simply declarative of the common law in this regard, but it shows the intent of the constitutional makers forever to put it beyond the power of the legislature to change the law in this regard, or to validate such contracts and, thereby, make possible any maladministration in public affairs along this line. To illustrate, independent of section 109 of the Constitution a tax collector cannot purchase at his own sale: *McLeod v. Buckhalter,* 57 Miss. 65 ; and a chancery clerk cannot purchase at a tax collector's sale: *Barker v. Jackson,* 90 Miss. 621, 44 South. 34. The court, however, declined to extend the rule in *Means v. Haley,* 86 Miss. 557,

38 South. 506, so as to preclude the wife of the tax collector from purchasing at a tax collector's sale, and this answers appellee's contention that if the rule contended for is to prevail then there is no limit to be placed upon such contracts.

In 15 Am. & Eng. Ency. of Law, 975, it is said: "The rule of public policy which prohibits a public officer from placing himself in a position where his individual interest is in opposition to his official duty has often been applied to cases where public officers, empowered to contract for services, or the performance of other work, or the furnishing of supplies, contract with themselves therefor. And where the procurement of services to be performed for a public corporation is entrusted to several officers, it is equally against public policy to permit one of such officers to contract therefor, though he takes no action as an officer on the question of his employment.

In many jurisdictions statutes declarative of the common law rule have been passed, expressly prohibiting public officers from being interested in any contract for the furnishing of supplies, etc., to the corporation of which they are officers, and contracts entered into by them in violation of such a statutory provision are *a fortiori* illegal." The same doctrine is announced in 28 Cyc. 625; Smith's Municipal Corporations, 739; Abbott's Municipal Corporations, §§ 255 *et seq.;* Throop on Public Officers, §§ 610 *et seq.; Berka v. Woodward,* 125 Cal. 119, 45 L. R. A. 420; *Michoud v. Girrord,* 4 How. (U. S.) 503; *Hardware Co. v. Macon,* 90 Miss. 636, 43 South. 304.

A contract between a municipal or legislative body and one of its members or a firm, of which he is a member, to perform legal services for such body or the municipality is void. *Young v. Mankato,* 97 Minn. 696, 3 L. R. A. (N. S.) 849; *Beebe v. Sullivan Co.,* 64 Hun, 377; *Burkett v. Athens,* 59 S. W. 667; *West v. Berry,* 98 Ga. 402.

A contract between a city and a member of its council to

render a medical treatment to its paupers is illegal. *Goodrich v. Waterville,* 88 Me. 39, 33 Atl. 659.

Employment by the board of health of one of its members to vaccinate school children is not enforcible. *Snipes v. Winston,* 126 N. C. 374, 78 Am. St. Rep. 666.

Neither may it employ a member of its council to superintend the extension of the city waterworks or prepare plans therefor. *Stone v. Bevan,* 88 Minn. 127, 97 Am. St. Rep. 506; *Mellis v. Shirley,* 16 Q. B. D. 446.

*Edward Mayes,* for appellee.

First. We contend that the constitutional provision, and the statute, do not contemplate nor include such a contract as this.

Secondly. We also contend that even if the contract because of Mr. Scott's connection with the board, were voidable, it lies entirely with the board to avoid it; and that this proceeding which the board did not originate, does not prosecute, cannot be maintained.

Thirdly. We also contend that even if the contract was not binding, yet, nevertheless, the service being reasonable and necessary, Mr. Scott is entitled to recover on a *quantum meruit,* although not for a fixed amount by the terms of the contract; and on the *quantum meruit* it appears that the services were worth the amount involved; wherefore the injunction should be dissolved.

The leading proposition is that neither the Constitution nor the statute includes this case.

In the construction and application of the Constitution and statute, the cardinal rule must be followed that the old law, the mischief, and the remedy intended are to be held in view.

Prior to the adoption of the constitutional provision it came within common observation and experience that public officials were too much inclined to let out contracts for services in the construction of public works and for similar services, including

printing and matters like that and be themselves interested in the execution of those services and in the consequent reception of the compensation paid. So, on the other hand, where large purchases were to be made for the benefit of the public, the same condition of things existed, all of which were detrimental to the public. And plainly we submit it was the making of contracts of that sort whereby large moneys were to be paid out, either for the construction of public works or the furnishing of public supplies or the acquisition of public property which induced the adoption of the constitutional provision, and the consequent enactment of the statute. Of course on contracts of exactly similar nature, the same principle would apply and the constitution and the law would also apply, even although these contracts should not call for the disbursement of large moneys from the municipal treasury.

The largeness of the evil that was suffered may have been the efficient cause by which public attention was attracted to that evil. But no doubt all instances, whether great or small, come within the prohibition of the constitution when they are instances of the prohibited class.

But this arrangement was not within the prohibited class. It was not a contract of that nature which either the constitution or the statute contemplated. The rendition of professional services by an attorney is a matter entirely different. The employment of an attorney or the engagement of an attorney to represent a public interest, and we are talking about public interests, is not a matter of common bidding or competition, and it is not hawked about in the market. An attorney at law in reputable standing, is in a sense an officer of the courts. He is mentioned by Mr. Blackstone, in his great work on the common law, as being a part of the very machinery of the law itself. They are everywhere considered, and classed, as being a learned profession. Anybody can make a contract to build a levee, and

it is a matter of public competition; anybody can sell the state a
lot of land, and that may be a matter of competition, but it is not
so with the rendition of legal services.   A lawyer is supposed to·
be engaged to look after a matter of public interest because of
some special personal qualification which he has therefor.   It
very often happens that in certain communities there are but one·
or two men, sometimes even none, who are in fact qualified to at-
tend to such matters.   Several counties might be named in this
state in which in the year 1890, when this constitutional provis--
ion was adopted, attorneys learned in the law were very few, and
to deny any board of public works or any official body the·
right to employ one of those few attorneys to attend to a matter
which he alone, or nearly alone, might be qualified to attend
to, merely on the ground that when the emergency arose he·
happened to be rendering a public service as a member of such·
board, is a matter of such serious import that, to say the least
of it, it is not to be intended that the constitutional convention,.
full of accomplished lawyers as it was, brought about such a con--
dition by any doubtful or dubious expression.   What that con--
vention had in view, and what the legislature had in view in fol-
lowing up by the the statute the constitutional declaration, was a·
forbidding of that which was then felt to be an injury to the pub--
lic interest.   There is plenty of authority on this proposition..
See the following cases: *Niles v. Muzzy,* 33 Mich. 61; *Evans v..
Trenton,* 24 N. J. L. 764; *Reif v. Paige,* 55 Wis. 496.

The cases relied upon by the attorney-general in his opinion·
on the subject, and which have been submitted to the court, when·
properly classed and analyzed, we submit do not overturn the·
authority of those cited above.

Mr. Scott in his capacity as a member of the board of levee·
commissioners, was under no obligation of any sort, no sort
of official duty, to serve the board as a lawyer.   Therefore, the·
services which he was employed to render was a service which·

was entirely outside of his duty to the board or to the public represented by the board. And this is the turning point of the whole argument.

*Frank Johnston,* on same side.

I. The question of the validity of the contract is purely statutory.

II. There is no statute which includes and applies to the contract in this case. None of the statutes cited apply to any of the levee boards.

III. There is no rule or principle of the common law that condemns the agreement before the court in this case.

IV. The agreement in this case is not of the character of contracts prohibited and condemned by the Constitution or statutes.

V. The contract in no view is void, but at most is voidable at the instance of the levee board and cannot be made the subject of a collateral attack.

*F. A. Montgomery,* also on same side.

Neither section 1305 of the Code nor section 109 of the Constitution applies to the board of levee commissioners for the Yazoo-Mississippi Delta, or members or officers thereof.

Article eleven of the Constitution of 1890 contains all of the constitutional provisions which were seen fit to be enacted into the organic law by the framers of the constitution, with reference to levee boards.

The levee laws themselves provide what contracts it shall be unlawful for officers or members of said board to have or own an interest or share in, and that the employment by said board of an officer or member thereon to perform public services for the public interest is not embraced in this levee law.

A public board of any kind is not prevented from employing an attorney at law, who is a member of the board to represent

the board in defense of public interest. It was never the intention of the framers of the Constitution or of the legislature to prevent the employment of a lawyer whose services were needed for the public interest, simply because he happened to be a member of the board employing him, in a case that is free from fraud, and where he takes no part in his own employment.

Argued orally by *J. B. Stirling,* attorney-general and *George Butler,* assistant attorney-general, for appellant, and by *F. A. Montgomery* and *Frank Johnston,* for appellee.

SMITH, J., delivered the opinion of the court.

Mr. D. A. Scott, an attorney at law, is a member and president of the board of levee commissioners for the Yazoo-Mississippi Delta. This board has its regular elected attorney, whose duty it is to attend to its legal matters. As several damage suits were and now are pending against said board, it was deemed advisable by the board and its regular attorney to employ counsel to assist its regular attorney in the defense thereof. On June 30, 1909, an order was passed authorizing the employment of Mr Scott for this purpose. Mr. Scott did not seek this employment, and retired from the board while this matter was under consideration, and took no part therein, except afterwards to accept the employment when requested so to do. This contract was made in good faith, the services to be rendered were of value to the board, the compensation agreed to be paid is reasonable, and a part of the services contracted for have been rendered. Doubts having arisen as to the legality of this contract, this suit was instituted for the purpose of ascertaining same. The bill filed in the court below prayed for an injunction restraining appellees from issuing to Mr. Scott a warrant for the compensation agreed to be paid him. A temporary injunction was granted accordingly. A demurrer to the bill and a motion to dissolve the injunction having been

filed by appellee, and the same coming on to be heard before the chancellor in vacation, a decree was rendered sustaining the demurrer and the motion, and dissolving the injunction, from which an appeal was granted to this court to settle the principles of the case.

The sole question presented on this appeal is the legality of the contract in question. Section 109 of the Constitution is as follows:

"No public officer or member of the legislature shall be interested, directly or indirectly, in any contract with the state, or any district, county, city or town thereof, authorized by any law passed or order made by any board of which he may be or may have been a member, during the term for which he shall have been chosen, or within one year after the expiration of such term."

Section 1305 of the Code of 1906 is practically a rescript of the above section and imposes a penalty for its violation. The board of levee commissioners in an agency created by the state for administering the affairs of the levee district. Its members are public officers. This contract of employment, in which Mr. Scott has a direct personal interest, was made by him with, and was authorized by an order made by, said board, of which he then was and now is a member. It comes, therefore, clearly within the constitutional prohibition.

It is contended that, "even if the contract was not binding, yet nevertheless, the services being reasonable and necessary, Mr. Scott is entitled to recover on a *quantum meruit.*" This question does not arise on this record.

The decree of the court below is reversed, the injunction reinstated, and the cause remanded for further proceedings.

*Reversed.*