583 So.2d 955 (1991)
The STATE of MISSISSIPPI, By and Through the Mississippi ETHICS COMMISSION, a State Agency; Walter Brown, Gene L. Fair, Mark G. Hazard, Ben H. Stone, Nina B. Goolsby, Delos H. Burks, Elizabeth C. Powers, and John Allen Darnell, in Their Official Capacities as Members of the Mississippi Ethics Commission
v.
Kate N. ASEME, M.D., Mississippi Hospital Association and Mississippi State Medical Association.
No. 07-CA-59343.
Supreme Court of Mississippi.
July 3, 1991.
*956 Mike C. Moore, Atty. Gen., Larry E. Clark, Asst. Atty. Gen., Jackson, for appellants.
George Q. Evans, Wise Carter Child & Caraway, R. Mark Hodges, Wise Carter Firm, Jackson, Burke C. Murphy, Jr., Canton, for appellees.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Today's case challenges the grant of summary judgment in a suit seeking declaratory judgment regarding the relationship between a public hospital and a physician who has been granted staff privileges at that public hospital. The Chancery Court of Hinds County, the Honorable Stuart Robinson presiding, determined that as a matter of law, such relationship does not, in and of itself, create a contract such that service of the physician upon the Board of Trustees of the institution violates Article 4, § 109 of the Mississippi Constitution and Mississippi Code Annotated § 25-4-105(2) (Supp. 1990). We affirm.

I.
On June 16, 1987, in response to an inquiry regarding possible conflicts of interest if a medical doctor with staff privileges at a local, publicly-owned, community hospital was selected to sit on the Board of Trustees of that same institution, the Mississippi Ethics Commission [Commission] issued Advisory Opinion No. 87-36-E. In this advisory opinion the Commission concluded that
[A] hospital medical staff doctor can simultaneously serve in a limited and restrictive manner on that hospital's board of trustees up until, but not beyond, the time the Board considers his/her reappointment to the medical staff. The reappointment matter will occur within the first twelve months of the staff doctor's board service at which time the doctor will have to choose between leaving the medical staff or violating Section 109 of the constitution and Code Section 25-4-105(2)(f).
Dr. Kate N. Aseme, a member of the Mississippi State Medical Association, has enjoyed medical staff privileges at Forrest General Hospital since 1977. During August of 1987 Dr. Aseme was appointed to a five (5) year term on the Board of Trustees of Forrest General Hospital.
The Mississippi State Medical Association requested a reconsideration of Advisory Opinion 87-36-E by letter dated September 25, 1987. On October 2, 1987, the Commission heard oral arguments in support of the request for reconsideration, and on October 29, 1987, issued a clarifying Memorandum stating that Advisory Opinion 87-36-E would remain in full force and effect pending consideration of the reconsideration requests. The clarification memorandum reiterated that the Commission would not place this issue on its November 6, 1987, agenda, but the Commission would accept additional written materials on the issue of reconsideration through November 23, 1987. The record contains no other action taken by the Commission on the issue of reconsideration.
Dr. Aseme's reappointment to the medical staff of Forrest General Hospital was scheduled to be considered by the Forrest General Hospital Board of Trustees on March 15, 1988. On December 29, 1987, the Mississippi State Medical Association, the Mississippi Hospital Association [the Associations] and Dr. Aseme filed suit against the Commission in the Chancery Court of Hinds County, Mississippi seeking a declaratory judgment pursuant to M.R.C.P. 57 regarding Advisory Opinion 87-36-E. An Amended Complaint was filed January 4, 1988. In their complaint Dr. Aseme and the Associations alleged that:

*957 To the extent that Advisory Opinion No. 87-36-E finds that a contractual relationship exists between a hospital and medical staff members, it is in conflict with an Official Attorney General's Opinion dated October 12, 1984, ... and with the Mississippi Supreme Court speaking in Trapp v. Cayson, 471 So.2d 375 (Miss. 1985), and ignores the fact that medical staff membership is a privilege constituting as a matter of law a license and not a contract. Dr. Aseme and the associations specifically requested declaratory judgment that a contract within the meaning of Article 4, Section 109 of the Mississippi Constitution of 1890 and Miss. Code Ann. § 25-4-105(2)(f) (Supp. 1987) does not exist between a hospital board and each member of its medical staff.
The Commission filed its Answer March 14, 1988. On March 30, 1988, Dr. Aseme and the Associations moved for summary judgment. The Commission moved for summary judgment on April 13, 1988.
On May 24, 1988, finding that the case presented a question of pure law which was ideally suited for disposition through summary judgment, the Chancellor rendered his Opinion. The Opinion held that the mere grant of medical staff privileges does not constitute a contract between the public hospital and staff physician, reversed the Advisory Opinion of the Commission and granted summary judgment to Dr. Aseme and the Associations.

II.
We employ a de novo standard in reviewing a lower court's grant of a summary judgment motion. Cossitt v. Federated Guaranty Mut. Ins. Co., 541 So.2d 436, 438 (Miss. 1989); Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (1988). Thus, we use the same standard that was used in the trial court. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983 and Supp. 1988). We must review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to the nonmoving party, who is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). The burden of demonstrating that no genuine issue of fact exists is on the movant. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63-64 (Miss. 1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). The Court does not try issues on a Rule 56 motion, it only determines whether there are issues to be tried. In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than for the purpose of resolving that issue. Comment, M.R.C.P. 56.
In passing on questions of law our review is de novo. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss. 1990); Cole v. National Life Ins. Co., 549 So.2d 1301, 1303 (Miss. 1989); Busching v. Griffin, 542 So.2d 860, 863 (Miss. 1989); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980). This Court has the responsibility of making the final interpretations of our State's Constitution. Frazier v. State By and Through Pittman, 504 So.2d 675, 694 (Miss. 1987).

III.
"The landmark case involving interpretation of Article 4, Section 109 of the Mississippi Constitution of 1890 and certain portions of Miss. Code Ann. § 25-4-105 (Supp. 1987) was Frazier v. State by and through Pittman, 504 So.2d 675 (Miss. 1987)." Smith v. Dorsey, 530 So.2d 5, 9 (Miss. 1988) (Prather, J. concurring in part and dissenting in part). Article 4, Section 109
prohibits any public officer or member of the legislature from:
(a) having any direct or indirect interest in any contract
(b) with the state or any political subdivision
(c) executed during his term of office or one year thereafter, and

*958 (d) authorized by any law, or order of any board of which he was a member.
At the outset we note that there is no difficulty in ascertaining (b) and (c), whether the contract was with some governmental entity and the time of its execution. We observe further that while (a) and (d) of the above factors are not always so clear-cut, the answer has usually been simple. See: Golding v. Salter, 234 Miss. 567, 107 So.2d 348 (1958) (county-owned hospital trustees were public officers and hospital purchasing eggs and beef from trustees violated 109); State ex rel Sterling v. Board of Levee Comm'rs, 96 Miss. 677, 51 So. 211 (1910) (president of levee board of commissioners was public officer and in violation of 109 when employed by levee board as special attorney); Noxubee County Hardware Co. v. City of Macon, 90 Miss. 636, 43 So. 304 (1907) (city alderman in violation of 109 when his retail business sold hardware supplies to city-owned electric utility).
* * * * * *
Further observations about 109:
First, it is clear this section is to protect the government. It is not a provision to protect individual rights... . . its purpose is to remove any temptation to invade its proscription.
It is also a self-executing section, and more specific than many, perhaps most, constitutional provisions. [citations omitted] It prohibits an individual having an interest in a contract when he as a public officer served on the official body which enabled the contract to come into being. It is that simple. Being self-executing, its provisions cannot be modified or encroached upon by the Legislature.
Frazier v. State By and Through Pittman, 504 So.2d 675, 693-94 (Miss. 1987).
The facts of this case are undisputed. "At the outset, it is clear that no genuine issue of material fact exists with respect to this issue. The only question is one of law involving an analysis of case law and interpretation of the applicable statute. Our only question is whether the lower court reached the correct conclusion of law." Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 439 (Miss. 1989). The question of law is whether the grant of medical staff privileges by a public hospital in and of itself creates a contract between the hospital and physician within the meaning of Article 4, Section 109.
Prior to determining whether the grant of medical staff privileges constitutes a contract, it is necessary to determine exactly what constitutes "staff privileges."
Generally, staff privileges permit a doctor to use hospital facilities to practice his medical profession. See Note, "Denial of Hospital Staff Privileges: Hearing and Judicial Review," 56 Iowa L.Rev. 1351, 1351-52 (1971); Shapiro, Law, Medicine and Forensic Science, 636 (3d Ed. 1982). (From the hospital bylaws we can glean the types of factors used to determine a doctor's staff privileges). Staff privileges are basically viewed as a reflection of the measure of proficiency a doctor attains in his medical specialty.
* * * * * *
Hence, staff privileges serve to delimit a doctor's authority to practice in the hospital based upon the doctor's overall competence in his particular field(s) of practice. Staff privileges do not establish an employment contract with the hospital.

Engelstad v. Virginia Mun. Hosp., 718 F.2d 262, 267 (8th Cir.1983) [emphasis added].
The relationship between a physician with staff privileges and the hospital granting the staff privileges was addressed in the case upon which the trial court relied in reaching its decision, Trapp v. Cayson, 471 So.2d 375 (Miss. 1985). Trapp, a medical malpractice case, had three (3) defendants  North Mississippi Medical Center, Dr. James T. Trapp and Radiology of Tupelo, P.A. The trial court directed a verdict in favor of North Mississippi Medical Center. Id. at 376. The directed verdict was challenged on cross-appeal based, in part, upon the relationship between the radiologist in question, Dr. Trapp, with the Medical Center:

*959 Cayson cross-appeals as to North Mississippi Medical Center, being aggrieved at the action of the lower court in sustaining the motion for directed verdict in favor of that institution. He principally contends that NMMC is liable because (1) nurses of the hospital obtained his signature on an informed consent form and (2) Dr. Trapp was an agent of NMMC.
* * * * * *
We have carefully considered the record with reference to the question of agency between Dr. Trapp and Radiology of Tupelo, P.A., and NMMC. NMMC's brief succinctly states the facts on that question:
The nature of the professional relationship between Dr. Trapp and the Hospital requires evaluation in light of the theory of ostensible agency urged by cross-appellant. Dr. Trapp had no contract with the Hospital in 1977 and he has no contract now. He is a member of Radiology of Tupelo, P.A. These radiologists have a private office in Tupelo where they practice radiology. No contract or agreement exists between the professional association and the Hospital. As member of the medical staff who agree to abide by the Hospital's bylaws and regulations in return for the privilege of practicing in the Hospital. ...
* * * * * *

The Hospital does not pay Dr. Trapp any salary or percentage or any other compensation. The Hospital does not pay the salary of any doctor that practices in its radiology department nor does it bill for any of their services. The radiologists handle their own billing. A patient brochure is given to every patient upon admission to the hospital. It states that radiologists, pathologists, and anesthesiologists will bill separately for their services.
The Hospital furnishes all of the equipment in the radiology department of the hospital. It provides the supplies, film, technical assistance, and everything "except the doctors' services themselves."
* * * * * *
In Hardy, Admx. of Est. of Ewing v. Brantley and Hinds General Hospital, 471 So.2d 358 (Miss. 1985), the Court held that Hinds General Hospital was liable for the acts of Dr. Terry K. Brantley, an emergency room physician. However, we distinguish Hinds General from the case sub judice. In Hinds General, there was a contract between the hospital and the physician. The patient went to Hinds General and was seen and treated in the emergency room by Dr. Brantley, who was not selected by him and who was unknown to him. In Hinds General, the hospital billed the patient for services, collected those charges, and handled all the records, which procedure differed from NMMC. In Hinds General, the Court said:
Where a hospital holds itself out to the public as providing a given service, in this instance, emergency services, and where the hospital enters into a contractual arrangement with one or more physicians to direct and provide the service, and where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment, the doctrine of respondeat superior applies and the hospital is vicariously liable for damages proximately resulting from the neglect, if any, of such physicians. By way of contrast and distinction, where a patient engages the services of a particular physician who then admits the patient to a hospital where the physician is on staff, the hospital is not vicariously liable for the neglect or defaults of the physician.

471 So.2d at 371.
Trapp v. Cayson, 471 So.2d at 383-385 [emphasis added].
In the case sub judice the uncontested facts show, and the trial court so *960 found, that aside from having staff privileges and being a member of the Board of Trustees for Forrest General Hospital, Dr. Aseme had no verbal or written contracts with the hospital. Additionally, Dr. Aseme received no compensation from the hospital, her income coming from her private practice in Hattiesburg, Mississippi. Dr. Aseme was not hired by Forrest General Hospital to administer services on behalf of the hospital, nor did the hospital hold itself out as offering the services of Dr. Aseme. As a private physician with staff privileges at Forrest General Hospital, Dr. Aseme was free to place, or not place, her private patients at that institution as she saw fit. Therefore, based on the foregoing authorities and the particular facts of this case, the trial court did not err in finding that as a matter of law the grant of staff privileges in and of itself does not constitute a contract within the meaning of Article 4, Section 109, reversing the opinion of the Ethics Commission and granting summary judgment for Dr. Aseme.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.