# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00606-SCT

### *HINDS COMMUNITY COLLEGE DISTRICT AND THE MISSISSIPPI ETHICS COMMISSION, BY AND THROUGH MISSISSIPPI ATTORNEY GENERAL MIKE MOORE*

### *v.*

### *DR. VERNON CLYDE MUSE*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/97 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAWRENCE AUTHUR SCHEMMEL |
| ATTORNEYS FOR APPELLEE: | LEAH DRAAYER MCDOWELL |
| | JOHN G. CORLEW |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 12/17/1998 |
| MOTION FOR REHEARING FILED: | 12/31/98 |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. The Mississippi Attorney General's Office, on behalf of Hinds Community College and the Mississippi Ethics Commission, filed a complaint in 1996 against Dr. Vernon Clyde Muse, President of Hinds Community College, for statutory violations of the Ethics in Government Act, commonly know as the conflict of interest laws. On October 21, 1996, Muse filed a motion to dismiss. The Circuit Court of the Second Judicial District of Hinds County granted Muse's motion on April 17, 1997, dismissing the complaint with prejudice. Aggrieved, the State brings this appeal assigning the following issues as error:

> **I. WHETHER THE STATE IS REQUIRED TO PROVE DAMAGES AS A RESULT OF MUSE'S VIOLATION OF STATUTORY CONFLICT OF INTEREST LAW SECTION 25-4-105(1) OF THE MISSISSIPPI CODE ANNOTATED.**

> **II. WHETHER MRS. MUSE'S TEACHING ACCOMPLISHMENTS AND BENEFITS CONFERRED UPON HINDS COMMUNITY COLLEGE ARE RELEVANT IN**

**DETERMINING WHETHER DR. MUSE VIOLATED THE CONFLICT OF INTEREST LAWS.**

**III. WHETHER THE ISSUE OF THE EXISTENCE OF ETHICS LAW VIOLATIONS IS MOOT.**

## STATEMENT OF THE FACTS

¶2. Dr. Vernon Clyde Muse has continuously served as president of Hinds Community College since 1978. His wife, Vashti Muse, a former kindergarten teacher, was hired by the college in 1980 as a part-time remedial reading instructor. She obtained a full-time position in 1983 and held this post until she resigned her position in April 1996. She has since continued to teach at the college without pay, indicating her ". . . selfless dedication to her students," according to her counsel's brief. However, Dr. Muse's salary and housing allowance were significantly increased in 1996 by the Hinds Community College Board of Trustees at the same time Vashti made her philanthropic decision to teach voluntarily.

¶3. As required by law, the Board of Trustees for Hinds Community College annually requests Dr. Muse to recommend teachers for the coming school year. Each year from 1983 until 1996, Dr. Muse recommended of his wife. Each year, after the Board of Trustees approved Vashti, Dr. Muse, on behalf of the college, entered into a written contract for one year with her. Over the course of her sixteen year employment at Hinds, Vashti received the compensation specifically provided by statute for a teacher of her educational background and tenure. The State claims that the contracts Dr. Muse entered into with his wife are void and seeks restitution for the amount of compensation Vashti received as a result of the contracts entered into from 1983, the year the conflict of interest statute was passed, until her resignation in 1996. The total amount Vashti received from these contracts was $311,709.00.

¶4. During Vashti's employment the Ethics Commission issued three advisory opinions stating that it was an unlawful conflict of interest in violation of Mississippi Code Annotated § 25-4-105(1) for a community college president to recommend or hire his spouse for employment at the same institution. Further, in November of 1987, Dr. Muse chaired a meeting of the Mississippi Junior College Association at which Ronald E. Crowe, Executive Director of the Mississippi Ethics Commission, spoke and informed the members present that it was a violation of Mississippi conflict of interest laws for the president of a community or junior college to recommend his or her spouse for employment at that institution. Finally, according to the State, the 1996 Mississippi Legislature rejected a Senate bill designed to allow community college boards to designate a third party to recommend a maximum of two teachers per year for employment. This so-called "Muse Amendment" would have created a new exception to the Mississippi conflict of interest laws.

¶5. The State is seeking restitution in the amount of $311,709.00 plus eight percent interest per annum, statutory penalties, removal of Dr. Muse from office, and a civil fine of $5,000.00.

## STANDARD OF REVIEW

¶6. When reviewing a lower court's decision to grant summary judgment this Court will employ a *de novo* standard of review. ***Moore ex rel. Benton County v. Renick***, 626 So. 2d 148, 151 (Miss. 1993). In other words, we will use the same standard applied by the trial court. ***Renick***, 626 So. 2d at 151. *De novo* review of a case requires that we examine all evidence in the record in a light most favorable to the

non-moving party. *Id.* (*citing **Smith v. Sanders***, 485 So. 2d 1051, 1054 (Miss. 1986)). Mississippi Rule of Civil Procedure 56(c) dictates that summary judgment is only granted when the moving party illustrates that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Thus, when we review a Rule 56(c) motion that has been granted, we do not rule on the issues, but rather we determine whether there are issues to be tried. ***Renick***, 626 So. 2d at 151.

## DISCUSSION

¶7. Though the State's brief raises only three issues on appeal, we have divided the issues into four distinct sections to address not only the issues raised by the State but also the affirmative defenses raised by Dr. Muse.

### I. THE STATE IS NOT REQUIRED TO PROVE DAMAGES AS A RESULT OF MUSE'S VIOLATION OF STATUTORY CONFLICT OF INTEREST LAWS.

¶8. The Ethics Commission charges Dr. Muse with violating Mississippi Code Annotated § 25-4-105(1), which reads:

> No public servant shall use his official position to obtain pecuniary benefit for himself other than that compensation provided for by law, or to obtain pecuniary benefit for any relative or any business with which he is associated.

Miss. Code Ann. § 25-4-105(1)(Supp. 1997). The Ethics Commission argues that Dr. Muse violated this statute by entering into a contract, on behalf of the college, with his wife, Vashti, and that the State is entitled to recover Vashti's salary for the thirteen years that she was employed in violation of this statute. The trial court dismissed the case, holding that even if Vashti's employment violated the statute, the Ethics Commission failed to prove that the State sustained any damages as a result of her employment.

¶9. Our Ethics in Government Act stems from the provisions of Section 109 of the Mississippi Constitution of 1890 which provides as follows:

> No public officer or member of the legislature shall be interested, directly or indirectly, in any contract with the state, or any district, county, city, or town thereof, authorized by any law passed or order made by any board of which he may be or may have been a member, during the term for which he shall have been chosen, or within one year after the expiration of such term.

The prohibitions of Section 109 may be expanded but may not be diluted by the legislature. Dr. Muse is technically not in violation of Section 109 since he is not a member of the board, though he is the executive head of the college. The statute, however, clearly embraces Dr. Muse as a covered "public servant" which is defined as "Any elected or appointed official of the government." Miss. Code Ann. § 25-4-103 (i)(Supp. 1997). Though we might envision some public officials who conceivably could belong to a class large enough to escape the prohibitory scope of the "interested, directly or indirectly" language, such analysis is unnecessary herein since the statute prohibits the obtaining of a ". . . pecuniary benefit for any relative." Relative is defined as ". . . spouse, child or parent." Miss. Code Ann. § 25-4-103 (p)(Supp. 1997).

¶10. Dr. Muse violated Mississippi law by ignoring the clear wording of the statute and proceeding at his own peril. Even so, he urges this Court to buy his specious assertion that the statute applies not to him since his wife provided quality educational benefits for the salary she received and thus the State suffered no

damages.

¶11. Two subsections of the Ethics in Government Act pertain to damages. Miss. Code Ann. § 25-4-19(f) grants the Ethics Commission the power to:

> Seek, in the name of and for the use and benefit of the State of Mississippi, or a political subdivision thereof, restitution or other equitable or legal remedies in civil law to recover public funds or property unlawfully taken, as well as any unjust enrichment although not public funds, and to recover on bonds where the state or a political subdivision thereof is the beneficiary.

Miss. Code. Ann. § 25-4-19(f)(Supp. 1997).

¶12. Subsequently, § 25-4-113, states:

> The attorney general of the state of Mississippi or any governmental entity directly injured by a violation of this act may bring a separate civil action against the public servant or other person or business violating the provisions of this article for recovery of damages suffered as a result of such violation. *Further, any pecuniary benefit received by or given by a public servant in violation of this article shall be declared forfeited by a circuit court of competent jurisdiction for the benefit of the governmental entity injured.* In the discretion of the court, any judgment for damages or forfeiture of pecuniary benefit may include costs of court and reasonable attorney's fees.

Miss. Code Ann. §  25-4-113 (1991)(emphasis added).

¶13. The trial judge in the case *sub judice* noted that Vashti had won numerous awards for being an outstanding remedial reading teacher. The issue of Dr. Muse's violation of the statutes, he reasoned, was moot because Vashti was paid in accordance with other employees of her educational background and tenure. Thus, he held that Hinds Community College did not suffer any injury as a result of Vashti's employment. This analysis is incorrect.

¶14. Conflict of interest laws are designed to instill public confidence in the integrity of government. Nepotism and self-dealing are two of the more pernicious threats to our democratic ideals. The Mississippi Legislature has concisely enunciated the Legislative purpose underlying the conflict in interest laws:

> The Legislature hereby declares it essential to the proper operation of democratic government that public officials and employees be independent and impartial; that governmental decisions and policy be made in the proper channels of the governmental structure; that public office not be used for private gain other than the remuneration provided by law; [and] that there be public confidence in the integrity of government.

Miss. Code Ann. § 25-4-1(Supp. 1997). Moreover, ". . . elective and public office is a public trust and any effort to realize personal gain through official conduct . . . is a violation of that trust. . . . " Miss. Code Ann. § 25-4-101. The injury inflicted in the case *sub judice* is not an injury to Hinds Community College resulting from inadequate teaching by Vashti. Her competence is irrelevant for our present consideration. Rather, the injury is to the public's perception of Hinds Community College, its administration and its faculty. By employing his wife, Dr. Muse presented an appearance of improper self-dealing. He appeared to use his public office to obtain pecuniary benefit for himself and his wife.

¶15. The legislative directive focuses on the wrongful gain to the violative public servant as a measure of damages to the public trust. The injury is the loss of public trust; the damages are the benefits wrongfully gained.

¶16. Dr. Muse further refines his posture by arguing that he acted in good faith and that the college received fair value from the superior teaching skills of Vashti.

¶17. In *Waller v. Moore ex rel. Quitman County Sch. Dist.*, 604 So. 2d 265 (Miss. 1992), we held that a school district entering into a contract with a school board member's wife violated Miss. Code Ann. § 25-4-105(2) as well as § 109 of the Mississippi Constitution. In *Waller* the defendants admitted their guilt but asked the Court to bar restitution arguing good faith and performance of the contract. *Waller*, 604 So. 2d at 266. We opined in *Waller* that even though we had allowed similar defendants in *Smith v. Dorsey*, 530 So. 2d 5 (Miss. 1988), to escape liability for a § 109 Constitutional violation, we did not intend for the *Smith* decision to issue a license for repeated § 109 violations. Accordingly, we held that good faith, long practice, and value received were not defenses to violations of the Ethics in Government Act or § 109 of the Mississippi Constitution. *Waller*, 604 So. 2d at 266 (*citing* *Golding v. Slater*, 234 Miss. 567, 107 So. 2d 348 (1958); *Miller v. Tucker*, 142 Miss. 146, 105 So. 774 (1925)). We reaffirmed our position in *Towner v. Moore ex rel. Quitman County School District*, 604 So. 2d 1093 (Miss. 1992). In *Towner,* we upheld a summary judgment ordering the Towners to repay Ezra Towner's teacher's salary because at the time he was employed as a teacher, his wife was a member of the school board. *Towner*, 604 So. 2d at 1099. The Towners were well aware of their violation of the Mississippi Constitution and the statutes. Indeed, shortly after Ezra Towner was hired, the school board attorney sent out a memorandum explaining the *Smith* case and informing school board members that it was a violation of Mississippi conflict of interest laws for the school district to employ their spouses. *Towner*, 604 So. 2d at 1094-95. In *Towner* we held that despite the fact that Mary Towner did not vote on whether or not to hire Ezra Towner, the contract was illegal and void because it violated Mississippi conflict of interest law § 25-4-105(2) as well as the Mississippi Constitution.

¶18. Dr. Muse attempts to distinguish the above cases by claiming that they deal with § 25-4-105(2) and Mississippi Constitution § 109, whereas he is charged with violating § 25-4-105 (1). He asserts that § 25-4-105(2) is concerned with a public servant's *interest* in the contract and § 25-4-105(1) pertains to a public servant's *conduct*. Muse contends that since the section of the statute under which he is charged deals with a public servant's conduct rather than the person's interest in the contract, that good faith and value received are relevant. We disagree. First, there is a serious question about Dr. Muse's good faith. The record reflects that he was long aware of his violation of Mississippi conflict of interest laws yet he continued his illegal actions for years. Secondly, our recognition of value received as a defense would encourage public servants to continue to violate the laws. We find no valid public policy argument to support adoption of either of these novel defenses. We shall continue to follow our *Waller* interpretation of § 25-4-105(2) and hold that good faith and value received are irrelevant when a public servant violates § 25-4-105(1).

**II. VASHTI MUSE'S TEACHING ACCOMPLISHMENTS AND BENEFITS CONFERRED UPON HINDS COMMUNITY COLLEGE ARE IRRELEVANT IN DETERMINING WHETHER DR. MUSE VIOLATED THE CONFLICT OF INTEREST LAWS.**

¶19. The trial court opined that Hinds Community College benefitted from Vashti's employment due to her "superior skills and performance" and her recognition by various organizations for her abilities. In fact, Vashti has received a remarkable number of awards. Her counsel lists the following among her accolades:

1995 William H. Meardy Faculty Member Award;

1994 Council for Advancement and Support of Education (CASE) Professor of the Year for Mississippi;

1992 Resolution of Commendation by the Hinds Community College Board of Trustees;

1990 Distinguished Academic Instructor of the Year for the Hinds Community College;

1991 Resolution of Commendation by the Mississippi Legislature; and, others.

The State argues that Vashti's accomplishments are irrelevant in determining whether or not Dr. Muse violated § 25-4-105(1).

¶20. We have previously held that when Constitutional ethics provisions are violated, considerations other than the violation, are, "utterly immaterial and wholly out of place, when the effort is here to have enforced a wise and salutary policy of protection for all the people by the constitution in sec. 109." *Noxubee County Hardware Co. v. City of Macon*, 90 Miss. 636, 640; 43 So. 304, 305 (1907). The following 1907 Mississippi Supreme Court remonstration from Chief Justice Whitfield to the Macon Aldermen is equally apropos to the Muse statutory violations:

. . . It may be that they have acted in actual ignorance of the true construction of this section. They will be without that excuse in the future. . . . . Let them both resign and resume their business.

*Id. at 641-42, 43 So. at 305.* See also *State ex rel. Stirling v. Board of Levee Commrs.*, 96 Miss. 677, 51 So. 211 (1910); *Golding v. Salter*, 234 Miss. 567, 107 So. 2d 348 (1958); *Miller v. Tucker*, 142 Miss. 146, 105 So. 774 (1925).

¶21. Any benefits Hinds Community College received as a result of Vashti's employment are irrelevant in light of Dr. Clyde Muse's repeated violations of the conflict of interest laws. Any benefit Vashti may have bestowed on Hinds Community College likely could have been conferred by any other equally competent and qualified educator whose honors further would not have been tainted by the appearance of nepotism and self-dealing. If we accepted Dr. Muse's argument, our conflict of interest laws would apply only when the employee was perceived to be only average or less than adequate. Such an interpretation of the law lacks intellectual credibility.

### III. THE EXISTENCE OF ETHICS LAW VIOLATIONS ARE NOT MOOT.

¶22. As discussed in Issue One, the trial court erroneously held that since no damages existed, it was a moot point whether Dr. Muse violated conflict of interest laws. We have stated above that monetary damages to Hinds Community College are not necessary in order to show damages under § 25-4-105(1). Dr. Muse's violations of the Mississippi ethics laws damage the reputation of his institution as well as public trust in the government and government officials. The violations are not moot and must be enforced without regard to whether the government suffered monetary damages.

## IV. AFFIRMATIVE DEFENSES RAISED BY DR. MUSE

### A. Whether Mississippi Code Annotated § 25-1-53 preempts § 25-4-105(1) as it applies to Dr. Muse.

¶23. Dr. Muse asserts that § 25-4-105(1) is a general statute governing ethics in government and that a separate statute specifically governs nepotism, § 25-1-53, thereby pre-empting application of § 25-1-105(1) to his situation. He cites **Lenoir v. Madison County**, 641 So.2d 1124 (Miss. 1994), for the proposition that when a particular statute deals with a special and particular subject, that statute's terms govern that precise subject over the general statute dealing with the subject generally. **Lenoir**, 641 So.2d at 1129. Muse argues that § 25-1-53 is a more specific statute because it specifically prohibits the Board of Trustees from employing a relative, and he claims that it does not speak to the president of a college employing a relative. Section 25-1-53 states:

> It shall be unlawful for *any person elected, appointed or selected in any manner whatsoever to any state, county district or municipal office, or* for any board of trustees of any state institution to *appoint or employ, as an officer, clerk, stenographer, deputy or assistant* who is to be paid out of the public funds, any person related by blood or marriage within the third degree, computed by the rule of the civil law, to the person or any member of the board of trustees having the authority to make such appointment, or contract such employment as employer. This section shall not apply to any employee who shall have been in said department or institution prior to the time his or her kinsman, within the third degree, *became the head of said department or institution or* member of board of trustees....

Miss. Code Ann. § 25-1-53. (emphasis added)(Supp. 1997). This statute does not shield the Muses because it does not include the employment of teachers. However, should we interpret the statute to include teachers as "assistants," then the statute would prohibit presidents of institutions, as well as members of Boards of Trustees, from employing their relatives as teachers. The nepotism shield is not a proper defense to this action.

¶24. We further note that **Moore v. McCullough**, 633 So. 2d 421 (Miss. 1993) is inapplicable to this case. **McCullough** dealt with a violation of § 25-4-105 (3) (a), the personal contracting subsection of the statute. Muse is charged with violating § 25-4-105 (1) which prohibits use of his official position to benefit a relative. McCullough was not a member of the Chickasaw County Board of Supervisors under § 25-4-105 (3) (a) nor was he married to any of the supervisors. Muse is a "public servant" employed by Hinds Community College as contemplated by § 25-4-105 (1). He used his position to obtain a pecuniary benefit for a relative, his spouse.

¶25. Dr. Muse also maintains that § 37-29-63 gives the Board of Trustees the sole discretion to hire and employ teachers. He claims that § 25-1-53 read in correlation with § 37-29-63 indicates that the legislature intended for the Board of Trustees to have responsibility of employing teachers and that it is the Board of Trustees who are prohibited from hiring relatives. We interpret the statutes otherwise. Section 37-29-63 dictates that the president of a community college shall have broad powers:

> ...to recommend to the board of trustees all teachers to be employed in the district. He may remove or suspend any member of the faculty subject to the approval of the trustees. He shall be the general manager of all fiscal and administrative affairs of the district with full authority to select, direct, employ

and discharge any and all employees other than teachers;...

Miss. Code Ann. § 37-29-63(1996). Clearly, the president of a community college plays a significant role in a teacher's employment. Not only does he develop the curriculum and appoint department heads, but without the president's recommendation, the Board of Trustees is unable to hire a teacher. Thus, the president of the institution as well as the members of the Board of Trustees are prohibited from employing relatives under § 25-4-105(1).

### B. Whether Dr. Muse can be charged with using his official position to obtain pecuniary benefit for his wife when he had no hiring authority over her.

¶26. Next, Dr. Muse argues that he never made any effort to realize unlawful personal gain through his official conduct. As stated *supra*, § 37-29-63 assigns the president of a community college a significant role in hiring teachers. A teacher cannot be employed at a community college without a recommendation from its president. Miss. Code Ann. § 37-29-63(1996). Further, it was Dr. Muse himself who entered into the contract with his wife each and every year of her employment. In *Towner v. Moore ex rel. Quitman County School District*, 604 So. 2d 1093 (Miss. 1992) we found that Mrs. Towner violated the conflict of interest laws even though she "abstained" when the school board voted on whether or not to hire her husband. The nodding and winking governmental cronyism forbidden in *Towner* is indistinguishable from the Muse facts. The bottom line is Dr. Clyde Muse was president of Hinds Community College. As president, he played a significant, and likely determinative, role in employing teachers. He was the only individual empowered to arrange courses of study and to recommend teachers for employment at the college. Since he was in a position to effect the employment of teachers, and since both he and his wife obtained pecuniary benefit through her employment as a teacher, their actions constitute a clear violation of § 25-4-105(1).

¶27. After this suit was brought, there was an attempt to pass a bill in the legislature that would allow someone other than a community college president to recommend two teachers each year to the Board of Trustees for employment at that institution. If the "Muse Amendment" had passed, someone other than Dr. Muse would have been able to recommend Vashti for employment and he would have been shielded from her future employment activity with the community college. The legislature rejected this attempt to create an exception to our conflict of interest laws. We follow the legislature's lead, and decline to create a Muse exception.

### C. Whether or not Section 25-4-105(1) is a quasi-criminal statute that must be construed in favor of Dr. Muse.

¶28. Finally, Dr. Muse asserts that prosecutions under § 25-4-105(1) are quasi-criminal proceedings and, as such, any ambiguity in the statute must be construed in his favor. Therefore, according to Dr. Muse, the Ethics Commission has over-broadly interpreted the statutes against him. He notes that when statutes are criminal they must be construed strictly in favor of the accused. *State v. Burnham*, 546 So. 2d 690, 692 (Miss. 1989). Dr. Muse asserts that this Court dubbed prosecutions under Chapter 25-4 as quasi-criminal in *Towner v. Moore ex rel. Quitman County School Board,* 604 So. 2d 1093 (Miss. 1992). To the contrary, in *Towner* we rejected Mary Towner's assertion that the charges against her under § 25-4-105(2) were quasi-criminal in nature therefore entitling her to a trial by jury. *Towner*, 604 So. 2d at 1098-99. In fact, we stated that although we sometimes label civil penalty or forfeiture prosecutions as quasi-criminal, such analysis does not alter their civil status. *Id.* Dr. Muse's assertion that this proceeding is quasi-

criminal " . . . swims upstream against the well-chewed over distinction between criminal prosecutions . . . and civil penalty or forfeitures processes." *Id.* at 1098-99. This issue is without merit.

## CONCLUSION

¶29. The State does not have to prove specific monetary damages in order to seek civil penalties for violation of § 25-4-104(1). Further, any benefit Vashti Muse conferred on Hinds Community College is irrelevant in determining whether or not Dr. Muse violated the law.

¶30. Finally, if Dr. Muse is found to be in violation of the conflict of interest laws, he should be subject to all penalties set forth under §§ 25-4-109 and 113 of the Mississippi Code of 1972, as amended. Today's ruling is based upon the record before us as it existed at the time of the trial court hearing on Dr. Muse's motion to dismiss and we have examined the record in a light most favorable to the non-moving party.

¶31. We therefore reverse and remand this cause for proceedings consistent with this opinion.

¶32. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE AND ROBERTS, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**


SMITH, JUSTICE, DISSENTING:


¶33. The majority holding that the trial court erred in ruling that direct injury or damages are required to be proven against a person charged with an ethics violation is specious. The majority's opinion that the State need not prove direct injury or damages is inconsistent with the Commission seeking judgment in the amount of $311,709.00, plus interest. This sum correlates exactly with Mrs. Muse's thirteen year salary received from teaching at Hinds. This is tantamount to denying that the Commission doesn't have to prove damages from Dr. Muse on the one hand, yet allowing the Commission to seek recovery of $311,709.00 damages on the other. This issue is clear considering Miss. Code Ann. § 25-4-113 (1991) which states in part, "The attorney general of the state of Mississippi or any governmental entity **directly injured by a violation of this act** may bring a separate civil action against the public servant or other person or business violating the provisions of this article **for recovery of damages suffered** as a result of such violation. . . ." (emphasis added). The majority's contention that the statute does not require that the Commission show actual injury or damages is flawed. The trial court was correct in requiring injury and damages to be proven. A simple review of the definitions of the two words in the dictionary would result with the inquiry; What else could the words injury and damage possibly mean? The Commission must prove that Hinds Community College was directly injured and suffered actual damages. Here, the Commission simply did not prove injury or damages. Mrs. Muse was paid a meager salary for thirteen years of employment as a teacher. She preformed her duties as a remedial teacher in an exemplary fashion. Hinds received the benefit of her unquestionable expertise in her field of endeavor in return for payment of her salary. The record reflects her dedication to Hinds in that she has taught without receiving any salary for the past two years. This remains true in spite of the Commission's and majority's attempt to belittle her valued service. Apparently there

exists some strange belief among some that there is no need for a remedial teacher on the college level these days. One need only examine the numerous public documents and state college board statistics which unquestionably support the need of remedial education for many students entering college, especially in the areas of Mathematics and English.

¶34. After considering the general purpose of § 109 of the Mississippi Constitution and our ethics in government statutes, I fail to see any conduct by Dr. Muse exhibiting bad faith, dishonesty, knowingly misusing the powers of his office, or that he "used" his position to obtain an unlawful pecuniary benefit, or a benefit that he would have otherwise been unable to gain "but for" his official position. I fail to see any unlawful conduct here regarding "use." In my view, the intent of the Legislature in adopting Miss. Code Ann. § 25-4-105 was clearly to protect the public trust in assuring that "use" means the improper exercise of official power to receive a pecuniary benefit that would not otherwise have been available to the official. There is clearly a "ministerial duty" exception as previously noted herein. *McCullough,* 633 So. 2d at 423.

¶35. Miss. Const. art. IV, § 109, reads:

> No public officer or member of the legislature shall be interested, directly or indirectly, in any contract with the state, or any district, county, city, or town thereof, authorized by any law passed or order made by any board of which he may be or may have been a member, during the term for which he shall have been chosen, or within one year after the expiration of such term.

The Mississippi Constitutions of 1817, 1832, and 1869 did not have a provision like section 109 of the 1890 Constitution. John G. Corlew, Section 109: Dilemma of the Public Official--And the Public, 56 Miss. L.J. 119, 121 (1986).[1] The provision was proposed by Judge S. S. Calhoon, later elected president of the convention, probably in reaction to the corruption and misuse of office experienced during Reconstruction. *Id*. at 122. Besides section 109, the 1890 constitution included other provisions designed to protect the public trust by prohibiting conflicts of interest by public officials. *Id*.; *See, e.g.,* Miss. Const. art. IV, § 47 (which prohibited legislators from accepting fees for serving as counsel with respect to legislation pending before either House); Miss. Const. art. IV, § 188 (which prohibited any public official from receiving free or discounted railroad or other transportation passes or tickets).

¶36. In *Cassibry v. State*[2], this Court held that Legislator Cassibry had a direct interest in the contract between a state agency and a corporation for which he served as attorney, because the legislature had authorized the contract. *Cassibry v. State*, 404 So.2d 1360, 1362 (Miss. 1981). The *Cassibry* decision raised many issues with regard to potential violations of section 109 prompting two unsuccessful attempts, in 1984 and 1986, to amend the section. Corlew, 56 Miss L.J. at 119-120. Most of these issues have now been resolved by *Frazier v. State ex rel. Pittman* and its progeny.

¶37. This Court has said:

> "The landmark case involving interpretation of Article 4, Section 109 of the Mississippi Constitution of 1890 and certain portions of Miss. Code Ann. § 25-4-105 (Supp.1987) was *Frazier v. State by and through Pittman*, 504 So.2d 675 (Miss.1987)." *Smith v. Dorsey*, 530 So.2d 5, 9 (Miss.1988) (Prather, J. concurring in part and dissenting in part).

*State ex rel. Mississippi Ethics Comm'n v. Aseme*, 583 So.2d 955, 957(Miss. 1991). In *Frazier*, this Court analyzed in detail § 109, finding that, first, this section is to protect the government and not individual

rights. ***Frazier v. State ex rel. Pittman***, 504 So.2d 675, 695 (Miss. 1987). "It is not concerned with whether some individual or class of individuals may suffer from its enforcement." ***Id***. Its purpose is to remove any temptation to invade its proscription regardless of motive or intent. The test is to be objective and mechanistic in application. ***Id***.

¶38. It is a self-executing provision that prohibits an individual from having an interest in a contract when he as a public officer enabled the contract to come into existence. ***Id***.; *see also* ***Bucklew v. State***, 192 So.2d 275 (Miss. 1966)(§ 175 held self-executing). In reference to § 109, this Court has said:

> [W]e must interpret this section in accordance with the plain meaning of its words so long as it bears some rational relationship to this purpose. Yet no meaning, however abstractly valid, should be carried into practical effect if doing so would cause grave risks to be imposed on the sound government of the people of this State. Such an interpretation would insult the common sense of our predecessors when they adopted § 109.

***Fraizer,*** 504 So. 2d at 695. Finally, the primary intent of the constitution framers was to prevent public officers' judgment from being influenced for personal benefit or private gain. ***Smith v. Dorsey,*** 530 So. 2d at 9 (Prather, J., concurring in part and dissenting in part).

¶39. Section 109 has been addressed several times by this Court since 1984. In ***Frazier***, this Court held that as between a legislator and spouse as a public school teacher, no conflict of interest existed, because § 109 was never intended to prohibit an individual from serving in the legislature simply because his spouse is employed as a public school teacher. ***Fraizer***, 504 So.2d at 699. ***Frazier*** also held that a county board member who authorized depository contracts between the county board and banks in which he was an officer did violate section 109. ***Id***. at 704.

¶40. In ***Smith v. Dorsey***, this Court held that school board could not enter into a teaching contract with the spouse of board member, because such was an "indirect interest" prohibited by Section 109. ***Smith***, 530 So.2d at 7. In ***Waller v. Moore ex rel. Quitman County***, this Court held that a county school board member had violated Section 109 by employing his spouse as a public school teacher, and that the defenses of good faith and value received are inapplicable. ***Waller v. Moore ex rel. Quitman County Sch. Dist.***, 604 So.2d 265, 266 (Miss. 1992). In ***Towner v. Moore ex rel. Quitman School Dist.***, 604 So. 2d 1093 (Miss. 1992) this Court affirmed ***Smith v. Dorsey,*** and also said that the fact that the school board member did not vote or attempt to influence the vote on her husband's teacher contract was beside the point of Section 109.

¶41. The application of Section 109 has the practical effect of strict liability. Defenses of good faith, value received, fairness, or abstention from the vote are worthless. The only defense this Court has accepted was that § 109 was never intended to prohibit an individual from serving in the legislature simply because his spouse is employed as a public school teacher. ***Frazier,*** 504 So. 2d at 699. Thus, it seems that a similar argument could be made with regards to Dr. Muse. This Court should affirm the trial judge.

¶42. I respectfully dissent.

1. Unfortunately, this law journal article was written pre-***Frazier*** and is therefore of only limited usefulness.

2. Prior to ***Cassibry***, most of the case law involving section 109 involved rather clear-cut circumstances of

conflicts of interest. Corlew, 56 Miss. L.J. at 123.