# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-SA-01245-SCT

*DIVISION OF MEDICAID, OFFICE OF THE
GOVERNOR AND MEDICAID EXECUTIVE
DIRECTOR ROBERT L. ROBINSON*

*v.*

*MISSISSIPPI INDEPENDENT PHARMACIES
ASSOCIATION, MISSISSIPPI PHARMACY
ASSOCIATION, NATIONAL ASSOCIATION OF
CHAIN DRUG STORES, WALGREENS CO., AND
FRED'S STORES OF TENNESSEE, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/26/2008 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | HAROLD EDWARD PIZZETTA, III |
| | MEREDITH McCOLLUM ALDRIDGE |
| | SHAWN STEPHEN SHURDEN |
| ATTORNEYS FOR APPELLEES: | J. PRICE COLEMAN |
| | LOWRY M. LOMAX |
| | BARRY K. COCKRELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/12/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., DICKINSON AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.    This appeal by the Division of Medicaid ("DOM") arises from a final judgment

entered by the Chancery Court of the First Judicial District of Hinds County, Mississippi.

The chancery court vacated an administrative rule promulgated by DOM that, as interpreted

by the chancery court, added an additional method for calculating reimbursement to pharmacists in violation of Sections 43-13-117(9)(b) and 43-13-117 of the Mississippi Code.

## FACTS AND PROCEDURAL HISTORY

¶2.    On March 5, 2008, DOM filed a "Notice of Proposed Rule Adoption" with the Mississippi Secretary of State. In the Notice, DOM stated that it was filing, as a final rule, an amendment to establish a State Maximum Allowable Cost (SMAC) program for certain multi-source (generic) drugs covered through the Mississippi Medicaid program.[1] The proposed implementation date of Rule AP 2008-23 was scheduled to be April 1, 2008. Following publication, the Mississippi Independent Pharmacies, Mississippi Pharmacy Association, National Association of Chain Drug Stores, Walgreens Co., and Fred's stores of Tennessee ("Pharmacists") filed objections with DOM. Pharmacists argued, among other things, that DOM's proposed use of a SMAC program created an additional method of reimbursement in violation of Sections 43-13-117(9)(b) and 43-13-117.

¶3.    In response, DOM filed an amended proposed rule on April 1, 2008, that merged SMAC into one of three existing methods of reimbursement known as estimated acquisition cost, or EAC. At request of Pharmacists, and in accordance with the requirements of the Mississippi Administrative Procedure Law, DOM conducted an oral hearing on April 28,

---

[1]A SMAC reimbursement methodology establishes maximum reimbursement amounts for equivalent groups of multiple-source generic drugs. Many states use a MAC program to contain costs. However, Mississippi is one of the few states that has not implemented the program. In DOM's proposed rule, it defined SMAC as an "actual acquisition cost that will be determined through the collection and review of pharmacy invoices and other information deemed necessary by the Division and in accordance with applicable State and Federal law."

2008. On April 30, 2008, DOM completed its review of all comments, and the comment period for the rule ended. On May 1, 2008, DOM published the final pharmacy reimbursement rule.

¶4. Meanwhile, Pharmacists filed an appeal with the Chancery Court for the First Judicial District of Hinds County, alleging that DOM had acted outside its statutory authority in promulgating a rule that changed the method for reimbursement without legislative amendment. DOM subsequently filed its administrative record with the chancery court. After reviewing DOM's findings and the entire administrative record, the chancery court vacated the rule. The court noted that any change to the method for reimbursement must be sought through legislative action. DOM filed a timely appeal.

## STANDARD OF REVIEW

¶5. An agency's interpretation of a rule or statute governing the agency's operation is a matter of law that is reviewed de novo, but with great deference to the agency's interpretation. *Sierra Club v. Miss. Envtl. Quality Permit Bd.*, 943 So. 2d 673, 678 (Miss. 2006) (citing *McDerment v. Miss. Real Estate Comm'n*, 748 So. 2d 114, 118 (Miss. 1999)). An agency may not adopt rules and regulations which are contrary to statutory provisions or which exceed or conflict with the authority granted by statute. *Miss. Pub. Serv. Comm'n v. Miss. Power & Light Co.*, 593 So. 2d 997, 1000, 1004 (Miss. 1991).

¶6. There is a "duty of deference that derives from the court's realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate." *Gill v. Miss. Dep't of Wildlife Conservation*, 574 So. 2d 586, 593 (Miss. 1990). However,

3

if an agency's interpretation is contrary to the unambiguous terms or best reading of a statute, no deference is due. *Sierra Club*, 943 So. 2d at 679. Specifically, an agency's interpretation will not be upheld if it is "so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Buelow v. Glidewell*, 757 So. 2d 216, 219 (Miss. 2000) (citation omitted).

## STATEMENT OF THE ISSUES

¶7. The parties raise the following issues on appeal:

I. **Whether DOM's interpretation of its governing statute and adoption of rule AP2008-23 violated Mississippi Code Section 43 - 13 -117(9)(b).**

II. **Whether the rule for reimbursement violated Mississippi Code Section 43-13-117(9)(b) that pharmacists be reimbursed for the reasonable costs of filling and dispensing Medicaid prescriptions.**

III. **Whether the rule is invalid because DOM did not provide an economic impact statement.**

IV. **Whether the DOM's actions were arbitrary and capricious.**

¶8. However, we find the first issue dispositive and limit our analysis to that issue.

## DISCUSSION

**Whether DOM's interpretation of its governing statute and adoption of rule AP2008-23 violated Mississippi Code Sections 43-13-117 and 43-13-117(9)(b).**

¶9. Medicaid is a cooperative program of the state and federal governments that provides medical assistance for the underprivileged. *Jones v. Howell*, 827 So. 2d 691, 693 (Miss. 2002) (*See* Title XIX of the Social Security Act of 1935, 42 U.S.C.A. §§ 1396 (2009). Under

4

the Medicaid program, the federal government shares with the states the cost of reimbursing participating agencies, physicians, and pharmacies for services rendered to eligible recipients. *Id.* On the state level, the Mississippi Medicaid Law, enacted in 1969, provides for a statewide system of medical assistance. *Jones v. Howell*, 827 So. 2d at 693 (citing Miss. Code. Ann. §§ 43-13-101 *et seq.* (2000 & Supp. 2001)).

¶10. In *Jones v. Howell*, this Court provided a succinct explanation of how Medicaid reimbursement functions:

> To become a Medicaid provider, a pharmacist must submit an application and execute a Medical Assistance Participation Agreement with the Division of Medicaid. Pursuant to the participation agreement, the pharmacist fills prescriptions for Medicaid recipients and submits claims for reimbursement to the Division of Medicaid. The Division of Medicaid reimburses each provider at the end of each month according to a specific formula.

*Jones v. Howell*, 827 So. 2d at 694. The formula associates the rate and method of reimbursement with the pharmacists' estimated acquisition cost, or EAC, among two other methods provided for in the statute.[2] DOM has consistently used EAC to calculate reimbursement, and EAC has always been defined in Mississippi using the average wholesale price (AWP).

¶11. Initially, the Legislature gave DOM the discretion to define EAC by statute. In 2002, the Legislature amended Section 43-13-117(9)(b) and provided a statutory definition for EAC. Using the average wholesale price, the Legislature set the reimbursement rate at 12

---

[2] The Centers for Medicare and Medicaid Services, the federal agency which administers the Medicaid program, has defined EAC as a state agency's "best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers." 42 C.F.R. § 447.502.

percent less than the average wholesale price paid by Medicaid providers. However, in 2004, the Legislature reinstated the language it had used prior to 2002, which allowed DOM to once again define EAC. DOM defined EAC as the average wholesale price less 25 percent, and it remained at that level until 2008.

¶12. In March of 2008, DOM proposed a state maximum allowable cost program (hereinafter SMAC) as a cost-containment measure. Pharmacists objected to the adoption of the rule. In response, DOM amended the rule, and used the SMAC program as an additional definition for calculating EAC; essentially merging the SMAC program into an existing method of reimbursement.[3] DOM relied on the language in the statue to validate the proposed rule.

¶13. Section 43-13-121 of the Mississippi Code authorizes DOM to adopt and promulgate reasonable rules, regulations and standards, with approval of the Governor, and in

---

[3] Initially DOM proposed the SMAC program as a fourth method of reimbursement. The proposed rule read as follows:

(1) The provider's usual charge and customary charge; or
(2) The Federal Upper Limit (FUL), if applicable, and dispensing fee of $4.91; $5.50; or
(3) Mississippi estimated acquisition cost defined as the average wholesale price less 25% and a dispensing fee of $5.50; or
(4) State Maximum Allowable Cost (SMAC) reimbursement and a dispensing fee of $5.50.

After objection from Pharmacists, DOM changed the rule to read:

(1) The provider's usual and customary charge; or
(2) The Federal Upper Limit (FUL), if applicable, plus a dispensing fee of $5.50;
(3) The EAC for multiple source drugs which is defined as the lesser of :
    •     AWP minus 25% plus a dispensing fee of $5.50 or
    •     SMAC rate plus a dispensing fee of $5.50.

accordance with the Administrative Procedures Law, Section 25-43-1. Miss. Code Ann. § 43-13-121 (Rev. 2009); Miss. Code Ann. § 25-43-1 (Rev. 2006). Additionally, Section 43-13-117(9)(b) provides the method and rate of reimbursement to providers of multi-source drugs (generic drugs). Specifically, it states:

> Payment by the division for covered multi-source drugs shall be limited to the lower of the upper limits established by Centers for Medicare and Medicaid Services (CMS) plus a dispensing fee, *or* the estimated acquisition cost (EAC) as determined by the division, plus a dispensing fee, *or* the providers' usual and customary charge to the general public.

Miss. Code Ann. § 43-13-117 (9)(b) (Rev. 2009) (emphasis added).

¶14. This section further provides:

> Notwithstanding any provision of this article, except as authorized in the following paragraph and in Section 43-13-139, neither (a) the limitations on quantity or frequency of use of or the fees or charges for any of the care or services available to recipients under this section , nor (b) *the payments or rates of reimbursement to providers rendering care or services authorized under this section to recipients, may be increased, decreased or otherwise changed from the levels in effect on July 1, 1999, unless they are authorized by an amendment to this section by the Legislature.* However, the restriction in this paragraph shall not prevent the division from changing the payments or rates of reimbursement to providers without an amendment to this section whenever those changes are required by federal law or regulation, or whenever those changes are necessary to correct administrative errors or omission in calculating those payments or rates of reimbursement.

Miss. Code Ann. § 43-13-117 (Rev. 2009) (emphasis added).

¶15. As stated above, the statute does permit changes to the rates of reimbursement or payments without legislative amendment, but only when "federal law so requires or whenever changes are necessary to correct administrative errors or omissions in calculating those payments or rates of reimbursement." Miss. Code Ann. § 43-13-117. These exceptions do not apply here.

7

¶16. It should be well-noted that this Court will not engage in statutory interpretation if a statute is plain and unambiguous. *In re Guardianship of Duckett*, 991 So. 2d 1165, 1181 (Miss. 2008) (citation omitted). The ultimate goal of the Court is to understand the legislative intent behind the statute. *Allred v. Yarborough*, 843 So. 2d 727, 729 (Miss. 2003) (citation omitted). The Court accepts the text of the statute as the best evidence of legislative intent. *In re Duckett*, 991 So. 2d at 1182.

¶17. Given the plain language set forth in Sections 43-13-117 and 43-13-117(9)(b), this Court finds the statute to be clear and unambiguous. We further find that DOM clearly promulgated a rule that contravenes its statutory authority. Rule AP2008-23 runs afoul of Section 43-13-117, as it alters the way in which Medicaid providers (Pharmacists) are reimbursed without prior legislative amendment.

¶18. In the instant appeal, DOM insists that the plain language of Section 43-13-117(9)(b) permits the agency to define the estimated acquisition cost. We agree. We do not agree, however, with DOM's position that the Legislature's 2004 deletion of any reference to average wholesale price in the statute authorized DOM to implement a state maximum allowable cost program that changes the rate of reimbursement to providers without further legislative approval. We find DOM's attempt to create such a rule to be outside its scope of authority.

¶19. DOM misreads the controlling language in Section 43-13-117, which specifically provides that the ". . . payments or rates of reimbursement to providers . . ." may not be ". . . increased, decreased or otherwise changed . . . unless they are authorized by an amendment to this section by the Legislature." Miss. Code Ann. § 43-13-117 (Rev. 2009).

8

DOM interprets the Legislature's 2004 action that removed from the statute any reference to the average wholesale price as an "amendment" that gave DOM the authority to change the rates of reimbursement without further legislative approval. However, legislative history lends no support to DOM's interpretation.

¶20.    Initially, the Legislature allowed DOM to determine the estimated acquisition cost, with no reference to the average wholesale price. DOM consistently defined EAC using the average wholesale price, less a certain percentage; this percentage varied at the discretion of DOM.[4] When the Legislature addressed rate reimbursement for Medicaid providers in 2002, it too defined EAC using average wholesale price, less a certain percentage. Further, when the Legislature placed the discretion to determine EAC back with DOM, it once again defined EAC using average wholesale price, less a certain percentage. It is evident from the past conduct of both DOM and the Legislature that "to determine" EAC means to do so using the average wholesale price. It further appears that DOM's discretion, as allocated by the Legislature, is limited to the discount, or percentage, subtracted from AWP. Therefore, DOM's use of a SMAC program to define EAC purports to change the manner in which EAC is calculated rather than simply redefine it, because it reduces the rate at which

---

[4] Average wholesale price is the average list price that a manufacturer suggests wholesalers charge pharmacies. This published price is purchased by government entities, private insurance companies, and other purchasers and often serves as the basis for prescription drug reimbursement. The AWP often has been equated with the "sticker price" or "list price." Most states use a drug's AWP to calculate the drug's EAC. Dawn M. Gencarelli, National Health Policy Forum, One Pill, Many Prices: Variations in Prescription Drug Prices in Selected Government Programs (August 29, 2005), http://www.nhpf.org/library/issue-briefs/IB807_DrugPricing_08-29-05.pdf (last accessed Nov. 2, 2009.)

9

Medicaid providers are reimbursed. DOM's proposed rule falls outside the realm of its authority, as DOM is statutorily prohibited from changing the rate of reimbursement without legislative approval. *See* Miss. Code Ann. § 43-13-117 (Rev. 2009).

¶21. Further, DOM opines that EAC and SMAC are so similar in nature that they may be used interchangeably. However, many states consider a SMAC program to be its own methodology, as evidenced in a report by the General Assembly of Virginia comparing its SMAC program to other reimbursement methodologies such as the Federal Upper Limit (FUL) and AWP.[5] The report notes that a SMAC program is more comparable to the FUL than to EAC. Like the FUL, a SMAC program establishes maximum reimbursement amounts for equivalent groups of multiple-source generic drugs, but allows states to achieve additional savings by (1) including more drugs than the drugs covered under the FUL program, and (2) setting lower rates of reimbursement than the FUL rates.[6] As such finding suggests, SMAC is its own method of reimbursement

¶22. DOM's use of the SMAC program to redefine EAC is an attempt to enforce an additional method of reimbursement that would cut the costs of Medicaid without following the proper procedure set forth in Section 43-13-117. As stated by the chancellor, "DOM attempted to use a legislative loophole to create a rule that is otherwise outside the scope of its authority," and ". . . [the] attempt is still in violation of the statutory mandates of Section 43-13-117 that prohibits changes in rates of payment without a legislative amendment."

---

[5]Report on the Maximum Allowable Cost Generic Drug Reimbursement Methodology 2 (2008), http://www.dmas.virginia.gov/downloads/studies_reports/RD19-2008_cost_drug.pdf (last accessed Nov. 2, 2009.)

[6] *Id*.

¶23. Although we afford "great deference" to an agency's interpretation of its governing statute, we will not permit an agency to adopt rules and regulations which are contrary to statutory provisions or which exceed or conflict with the authority granted by statute. *Miss. Pub. Serv. Comm'n v. Miss. Power & Light Co.*, 593 So. 2d 997, 1000, 1004 (Miss. 1991).

¶24. This Court takes no issue with DOM's desire to cut costs during economic uncertainty; we ask only that DOM adhere to the procedure in the statute. While we recognize the particularly difficult financial position in which Medicaid finds itself, this Court will not allow the plain language of Section 43-13-117 to be swept away in the interest of cost containment. The formula for reimbursement was established by statute, and cannot be varied by the Division of Medicaid. *Jones v. Howell*, 827 So. 2d 691, 694 (Miss. 2002). Any changes to the rate or method of reimbursement must be sought through legislative action pursuant to statutory mandate.

## CONCLUSION

¶25. The Chancery Court of the First Judicial District of Hinds County properly vacated the final rule of the Division of Medicaid. The plain language in Sections 43-13-117 and 43-13-117(9)(b) is clear and unambiguous, and precedent forbids this Court to engage in statutory interpretation. Therefore, we find that DOM acted outside the scope of its authority when it adopted Rule AP2008-23. The judgment of the chancery court is hereby affirmed.

¶26. **AFFIRMED**.

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**

11